IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | 8:05CV154 |
| ) | |
| TIMOTHY M. KURMEL and ) | Bankruptcy Case No. |
| MARY JO KURMEL, ) | BK 03-82722 (Chapter 7) |
| ) | |
| Debtors. ) | Adversary Case No. A03-8075 |
| _____ | |
| ) | |
| JUDITH O. LETRUD, SHELLY A. ) | **MEMORANDUM** |
| KOEHLER, and HEARTLAND ) | **AND ORDER** |
| PHYSICAL THERAPY, INC., ) | |
| ) | |
| Plaintiffs/Appellees, ) | |
| ) | |
| vs. ) | |
| ) | |
| TIMOTHY M. KURMEL, ) | |
| ) | |
| Defendant/Appellant. ) | |

The bankruptcy court[1] has determined that a state court judgment entered against the appellant, Timothy M. Kurmel ("Kurmel"), is not a dischargeable debt. After carefully examining the parties' briefs (filings 7, 8, 12) and the designated record on appeal,[2] I conclude that the judgment of the bankruptcy court should be affirmed.

---

[1] The Honorable Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

[2] I find that oral argument is not needed because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.  See Bankruptcy Rule 8012.

## *INTRODUCTION*

The appellees, Judith O. Letrud ("Letrud"), Shelley A. Koehler ("Koehler"), and Heartland Physical Therapy, Inc. ("Heartland"), filed suit against Kurmel in the District Court of Madison County, Nebraska, on October 15, 2001. (#43, Exhibit C.)[3] Also on that same date, in the same court, an amended petition was filed in a case that Heartland had previously brought against Partners in Physical Therapy, Inc. ("Partners"), which was wholly owned by Kurmel.[4] (#43, Exhibit A.) It was alleged in both actions that Heartland, which was owned jointly by Letrud, Koehler, and Kurmel, had been overcharged since June 1, 1993, for administrative services that were provided by Partners pursuant to an oral agreement.

The cases were consolidated for a bench trial. On August 15, 2003, a single judgment was entered in favor of Letrud, Koehler, and Heartland, and against Kurmel and Partners, jointly and severally, in the amount of $378,386.30, plus post-judgment interest and costs. (#43, Exhibit F.)

On August 27, 2003, Kurmel and his wife filed for Chapter 7 bankruptcy protection. About a month later, on September 26, 2003, Letrud, Koehler, and Heartland filed a complaint in the bankruptcy court seeking a determination that the judgment debt "is nondischargeable under Section 523(a)(2) of the Bankruptcy Code." (#1 ¶ 8.) Section 523(a)(2) excepts from discharge any "money . . . obtained by . . . false pretenses, a false representation, or actual fraud, . . .." 11 U.S.C.A. 523(a)(2)(A) (West 2004). However, in an amended complaint filed with court

---

[3] As used throughout this opinion, a number sign ("#__") references a bankruptcy court filing.

[4] Letrud and Kurmel were equal shareholders in Partners until September 30, 1996, when Letrud sold her shares to Kurmel.

approval on February 26, 2004,[5] the appellees alleged more generally that the judgment debt "is nondischargeable under Section 523(a)."  (#13 ¶ 8.)

On April 1, 2004, Letrud, Koehler, and Heartland filed a motion for summary judgment in which they claimed that the judgment debt "is nondischargeable under Sections 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code."  (#17 ¶ 1 b.)  Section 523(a)(4) creates an exception "for fraud or defalcation while acting in a fiduciary capacity, . . ..""  11 U.S.C.A. 523(a)(4) (West 2004).  The appellees further alleged that "[t]he issues of Defendant's fraudulent conduct and breach of fiduciary duties were raised in Case No. CI-01-679R and Case No. CI01-362R filed in the District Court for Madison County, Nebraska, . . ." and "[t]he judgment obtained by Plaintiffs against Defendant settled the question of Defendant's fraudulent activity and defalcation, and the principles of collateral estoppel bar the Defendant from relitigating those matters in the bankruptcy court."  (# 17, ¶ 1 c & e.)

On May 19, 2004, the bankruptcy court entered an order denying the motion for summary judgment.  (#23.)  The court explained that "[t]he state court decree does not reveal any findings as to Mr. Kurmel's intent concerning any alleged misrepresentations[,]" that "the amended complaint [filed in state court] contains numerous allegations that appear to state a claim for breach of contract rather than a § 523(a)(2)(A) claim[,] and that "[t]he state court decree cannot be used to establish fraud or defalcation by a fiduciary" because it "does not address those elements."  (#24 at 6.)

On June 23, 2004, Kurmel filed a motion for summary judgment, contending that "(i) any claim . . . for fraud under § 523(a)(2)(A) is barred by the doctrine of res judicata, and (ii) Plaintiffs have failed to state a claim under § 523(a)(4)."  (#27.)  The

---

[5] The bankruptcy court noted that Kurmel filed no resistance or objection to the appellees' motion to amend.  See docket entry dated February 20, 2004 (#12).

bankruptcy court deferred ruling on Kurmel's motion while granting appellees leave to file a second motion for summary judgment. See docket entries dated June 24, 2004 (#31), August 16, 2004 (#34), and November 11, 2004 (#41). The appellees' second motion was filed on December 3, 2004. (#42.) It is identical in all material respects to the appellees' first motion for summary judgment, but additional evidence was submitted for the bankruptcy court's consideration, including a transcript of the state court proceedings. (#43, Exhibit N.)

On January 28, 2005, the bankruptcy court granted the appellees' second motion for summary judgment and denied Kurmel's summary judgment motion. (#50.) Among other findings, the court determined that Kurmel had "made false representations to the plaintiffs by sending them fraudulent invoices" and "committed defalcation while acting in a fiduciary capacity with respect to the general misuse or misappropriation of corporate funds." (#51 at 5, 7.) The court therefore held that the judgment debt is excepted from discharge under subsections (a)(2)(A) and (a)(4) of 11 U.S.C. § 523. (Id.)

### *The Issues on Appeal*

Kurmel essentially argues that the bankruptcy court's initial assessment of the state court decree was correct, and that the bankruptcy court should not have relied upon the trial transcript to interpret the decree or to make its own findings of fraud and defalcation. Kurmel also argues that the bankruptcy court should have granted his motion for summary judgment because the state court's judgment was not entered with respect to a claim of fraud, and because the appellees' amended complaint in the bankruptcy court did not allege defalcation by a fiduciary as an alternative basis for finding that the judgment debt is nondischargeable.

As identified in Kurmel's brief, four basic questions are presented on appeal:

   1. Whether the bankruptcy court erred in ruling that the state court decree establishes that Kurmel committed fraud under §523(a)(2)(A) of the Bankruptcy Code, and that Kurmel is thereby estopped from contesting the non-dischargeability of the state court judgment.

   2. Whether the bankruptcy court erred by failing [to] grant Kurmel's motion for summary judgment upon the grounds that Appellees' fraud claim under § 523(a)(2)(A) is barred by the doctrine of res judicata.

   3. Whether the bankruptcy court erred in ruling that the state court decree establishes the elements of defalcation by a fiduciary under § 523(a)(4), by which Kurmel is collaterally estopped from contesting the non-dischargeability of the state court judgment.

   4. Whether the bankruptcy court erred in determining that Appellees' amended complaint states a claim for defalcation under § 523(a)(4).

(Filing 7 at 2-3.) The first question I answer, "Yes." The others I answer, "No."

### *The State Court Proceedings*

Because most of the issues on appeal concern application of the doctrines of collateral estoppel and res judicata, it is necessary to set forth in some detail the content of both the pleadings and the judgment filed in the state court. This review will include a summary of the plaintiffs' allegations of operative facts and theories of recovery, and a complete recitation of the state court's decision.

The amended petition filed in the action brought by Heartland against Partners (Case No. CI01-362R), and also the petition filed in the action brought by Letrud, Koehler, and Heartland against Kurmel (Case No. CI01-679R), contain the following factual allegations, which were generally denied by the defendants:

9.   On or about June 17, 1993, Heartland was incorporated, and at all times from and after the date of incorporation, Letrud and Koehler and Defendant Kurmel have owned 33.33 shares of capital stock of Heartland, and Letrud, Koehler and Kurmel have served on the board of directors of Heartland. From June 18, 1993, to April 29, 2001, Kurmel served as the vice president of Heartland. Heartland commenced its business operation on or about June 1, 1993.

10.   On or about June 1, 1993, Heartland entered into a verbal agreement with Partners whereby Partners would supply Heartland with contract labor, including physical therapists, an occupational therapist, therapy aids [sic] and administrative staff. Heartland would pay Partners an amount sufficient to pay the wages, benefits and retirement plan contributions for all such contract labor. As a result, Heartland had no employees. Heartland agreed to pay Partners an administrative fee of 10% of the wages (excluding benefits and retirement plan contributions) for all contract labor.

11.   From and after June 1, 1993, Partners, under the exclusive control of Kurmel, issued and sent invoices to Heartland containing general descriptions of the hours worked, the rate of pay and the total amount due from Heartland to Partners, so that Partners could pay the wages, benefits and retirement contributions to the contract labor and satisfy the administrative fee. The administrative fee was not designated or disclosed in any of the invoices.

12.   From and after June 1, 1993, Partners, under the exclusive control of Kurmel, improperly and fraudulently issued and sent invoices to Heartland which charged administrative fees greater than those agreed to and administrative fees that were excessive and unreasonable, which Heartland paid without knowledge of such improper and fraudulent billing.

13.   In addition, from and after June 1, 1993, Partners, under the exclusive control of Kurmel, received and retained the amounts invoiced to Heartland, and yet on occasion refused or failed to pay the contract laborers their wages, benefits and retirement plan contributions.

>    14.  Only Kurmel and Partners know and have access to documents which would show the amounts they improperly invoiced, received and retained from Heartland and the amounts they refused or failed to pay to the contract laborers.

(#43, Exhibit A at 2-3, Exhibit C at 2-3.)

Four causes of action are specifically identified in the pleading filed against Partners: (1) breach of contract; (2) promissory estoppel; (3) action in assumpsit for money had and received; and (4) fraud.  (#43, Exhibit A at 3, 4, 5.)  The petition filed against Kurmel contains three causes of action.  The first cause of action is not specifically identified in the petition (i.e., there is no subheading for a "first cause of action" or any description of the claim), but the second and third causes of action are identified and described as involving, respectively, a "breach of fiduciary duty between shareholders of close corporation" and a breach of "directors' fiduciary duties."  (#43, Exhibit B at 5, 6.)

First examining the amended complaint filed by Heartland, it is simply alleged for the breach of contract claim that Partners refused or failed to "pay the contract laborers their wages, benefits and retirement plan contributions as provided in the parties' agreement."  (#43, Exhibit A ¶ 16.)  Demand is also made for an accounting and for prejudgment interest.  (#43, Exhibit A ¶¶ 17, 18.)  The promissory estoppel claim likewise seeks "enforcement of Partners' promises contained in the parties' verbal agreement[,]" while it is alleged for the assumpsit claim that Partners "received money from Heartland for amounts in excess of the agreed administrative fee and for wages, benefits and retirement plan contributions which Defendant never made."  (#43, Exhibit A ¶¶ 22, 25.)  Of particular interest is the fraud claim, as to which Heartland alleged as follows:

>    29.  Partners, under the exclusive control of Kurmel, represented to Heartland that Partners would only charge a 10% administrative fee as described above and upon receipt of payment on

invoices to Heartland, Partners would pay the contract laborers their wages, benefits and retirement contributions.

30. The representations made by Partners, under the exclusive control of Kurmel, were false and fraudulent.

31. When such representations were made, Partners intended Heartland to rely of [sic] such representations.

32. Heartland did rely on such representations.

33. Heartland's reliance on such representations was reasonable.

34. Defendant's false and fraudulent representations were a proximate cause of damages to Heartland.

35. The nature and extent of those damages may only be known after an accounting has been ordered and completed.

(#43, Exhibit A at 5.)

Nearly identical allegations of fraud are contained in the first cause of action alleged in the petition filed by Letrud, Koehler, and Heartland against Kurmel. (#43, Exhibit C, ¶¶ 15-22.) In addition, it is alleged that:

24. Upon information and belief, Partners was never capitalized or was grossly undercapitalized, and was insolvent when it entered into the oral [agreement] and when it improperly received and retained monies from Heartland.

25. Upon information and belief, Kurmel operated Partners as a mere facade for his personal dealings and carried on operations in disregard of the corporate entity.

-8-

>       26.   Upon information and belief, Kurmel diverted corporate funds or assets of Partners for his personal use or for improper use with the intent to defraud Plaintiffs.
>
>       27.   Kurmel actually controlled Partners and exercised that control to commit fraud, violate a legal duty, perpetuate a dishonest and unjust act or other wrong in contravention of the contractual and common law rights of Plaintiffs.
>
>       28.   Upon information and belief, Partners, under Kurmel's exclusive control, failed and was unable to make any provision for the payment to creditors, including Plaintiffs.
>
>       29.   Against Kurmel's conduct, Plaintiffs have no adequate remedy at law.

(#43, Exhibit C at 4-5.)

For their second cause of action against Kurmel ("breach of fiduciary duty between shareholders of close corporation"), the appellees alleged that:

>       31.   Heartland was a closely held corporation, and its shareholders owed one another the same fiduciary duty as that owed by one partner to another in a partnership, namely, a duty to act among themselves in the utmost good faith and loyalty and to refrain from taking advantage of one another by the slightest concealment or representation of any kind.  Moreover, such shareholders cannot derive a secret profit from partnership transactions unknown to the other, and must at all time act for the common benefit of all shareholders.
>
>       32.   Kurmel breached such fiduciary duties which breach proximately caused damages to Plaintiffs.
>
>       33.   Kurmel received benefits from Heartland and denied benefits to Letrud and Koehler, but Kurmel failed to hold such benefits as a trustee for the benefit of Plaintiffs.

(#43, Exhibit C at 5-6.)

Finally, for their third cause of action against Kurmel ("directors' fiduciary duties"), the appellees alleged that:

> 35. A corporate director must act in the best interest of shareholders and is obligated to the duty of fidelity, good faith and prudence with respect to the interest of security holders as well as a duty to exercise independent judgment with respect to matters committed to the discretion of the board of directors and to refrain from faithlessness and self dealing.
>
> 36. Kurmel violated these directors' fiduciary duties, which violation proximately caused damages to Plaintiffs.

(#43, Exhibit C at 6-7.)

The state court's judgment is set forth below, in its entirety:

IN THE DISTRICT COURT OF MADISON COUNTY, NEBRASKA

| | |
|---|---|
| HEARTLAND PHYSICAL THERAPY, INC., <br>     Plaintiff, <br>   v. <br> PARTNERS IN PHYSICAL THERAPY, INC., <br>     Defendant. | Case No. CI01-362R <br><br> DECREE |
| JUDITH O. LETRUD, SHELLY A. KOEHLER, and HEARTLAND PHYSICAL THERAPY, INC., <br>     Plaintiffs, <br>   v. <br> TIMOTHY M. KURMEL, <br>     Defendant. | Case No. CI01-679R <br><br> DECREE |

This matter came on for trial to the court on July 22, 2003. Appearing for the plaintiffs was Gregory Scaglione. Appearing for the defendant was Stuart B. Mills. The parties appeared personally.

The parties waived a jury trial on the record and agreed that the two petitions in these files could be tried jointly.

Witnesses were sworn, evidence adduced, exhibits marked, offered and received, and the parties rested. All Motions for Directed Verdict and Motions to Dismiss were overruled. The parties were given 10 days to file post trial briefs.

Now on this 15th day of August, 2003, the court being fully advised in the premises finds as follows:

The court finds that in none of the pleadings is the issue of statute of frauds raised in any manner, nor was there any demurrer filed to the amended petitions. In addition, there is no evidence presented during the trial by the defendant to substantiate any alleged claim that it might have that the statute of fraud [sic] applies. Finally, it is apparent to the court that the evidence reflects that the plaintiffs were unaware of the activities of the defendant until late 2000. The court concludes that the statute of fraud [sic][6] has not properly been raised, nor is it a valid defense in this case.

The court further finds, by the greater weight of the evidence, that an oral contract was entered into by Timothy M. Kurmel and Heartland Physical Therapy, Inc., and that neither party disputes such contract. The evidence is further clear that Timothy M. Kurmel, through Partners in Physical Therapy, Inc., was to provide contract labor to Heartland Physical Therapy, plus additional employee costs. The only dispute is the fees Timothy M. Kurmel, through Partners in Physical Therapy, Inc., was to receive for this service. However, that dispute does not include a 10 percent administrative fee on the covered wages, to which all

---

[6] In this instance the court presumably meant to say "statute of limitations" rather than "statute of frauds."

parties agree. The dispute centers on the allocation of Mr. Kurmel's operating expenses to Heartland Physical Therapy, Inc.

In reviewing the evidence, the actions of the parties during the period of this agreement, and the exhibits, it is clear that Mr. Kurmel violated the trust placed in him by the plaintiffs. He failed to contribute to the 401k plan $79,263.30, final payroll taxes of $3,313, all to the detriment of the plaintiffs. In addition, he readily acknowledged that during the time covered he allocated to the plaintiffs the costs of his gambling counseling, contract payments he was making to Mrs. Letrud, and the corporate loans to himself. His testimony was that these amounts, as well as all other operating expenses incurred, were allocated to the plaintiffs. Finally, when Mr. Kurmel was confronted by the plaintiffs to give them an accounting and formula as to how he was computing the costs billed to the plaintiffs, they were furnished with incomprehensible gibberish. There is absolutely no rhyme or reason or evidence produced by Mr. Kurmel that could clearly establish how he was computing the bills sent to the plaintiffs.

Considering all of this, the court is convinced that the oral agreement included a 10 percent administrative fee. The court finds that the 10 percent administrative fee includes all of the employee costs being provided to the plaintiffs. Counsel for the plaintiffs indicated that the 401k payments should be an additional amount, however, in reviewing Exhibit 5, and the testimony of the plaintiff's accountant, this court believes that those funds were included in the gross wages set out at Tab 1. The court finally concludes that the oral agreement called for a 10 percent administration [sic] fee of all of the expenses provided by the defendant to the plaintiffs, and therefore finds that judgment should be entered in the amount of $378,386.30 against the defendants.

Concerning the plaintiffs' allegations that Mr. Kurmel was using Partners in Physical Therapy, Inc., simply as an "alter ego", the court finds that the evidence is overwhelming that that was the case. Mr. Kurmel did next to nothing to fulfill the statutory requirements of operating under the corporate veil. This court concludes that Partners in Physical Therapy, Inc. simply became the alter ego or business

conduit of Mr. Kurmel, and that therefore judgment should be entered against Mr. Kurmel as well as Partners in Physical Therapy, Inc.

Finally, it is apparent that Mr. Kurmel violated his fiduciary duties to Judith O. Letrud, Shelly A. Koehler, the owners of Heartland Physical Therapy, Inc., in his activities demonstrated in this suit, and it is appropriate that judgment be entered in favor of all of the plaintiffs, jointly and severely [sic].

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment be entered in favor of Judith O. Letrud, Shelly A. Koehler, and Heartland Physical Therapy, Inc., plaintiffs, in the amount of $378,386.30, and against the defendant, Timothy M. Kurmel and Partners in Physical Therapy, Inc., jointly and severely [sic], as well as the costs of this action. No prejudgment interest is awarded. Post judgment interest shall accrue at the statutory rate.

BY THE COURT:

s/ Patrick G. Rogers
District Judge

(#43, Exhibit F.)

### *DISCUSSION*

A bankruptcy court's grant of summary judgment is reviewed de novo, viewing the facts in the light most favorable to the nonmoving party. In re Marlar, 267 F.3d 749, 755 (8th Cir. 2001). Therefore, if the record shows that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law, the grant of summary judgment will be affirmed. In re Waugh, 109 F.3d 489, 491 (8th Cir. 1997). Denial of summary judgment is also reviewed de novo, giving the party opposing summary judgment the benefit of all reasonable inferences. See Kukla v. Hulm, 310 F.3d 1046, 1047 (8th Cir. 2002). In applying a de novo standard of

review, the bankruptcy court's judgment may be affirmed on any basis supported by the record. See King v. Fletcher, 319 F.3d 345, 347 (8th Cir. 2003).

Collateral estoppel (or issue preclusion) applies in bankruptcy dischargeability proceedings brought under section 523(a). In re Madsen, 195 F.3d 988, 989 (8th Cir. 1999) (citing Grogan v. Garner, 498 U.S. 279, 284-85 n. 11 (1991)). When the parties have previously litigated an issue in a state court, the bankruptcy court will apply the law of collateral estoppel of the state. Id. (citing Haberer v. Woodbury County, 188 F.3d 957, 960-961 (8th Cir. 1999).

Res judicata (or claim preclusion) is a different matter, however. In Brown v. Felsen, 442 U.S. 127, 138-39 (1979), the Supreme Court held that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of a judgment debt, and that res judicata does not apply.[7] This holding fully disposes of Kurmel's argument that the bankruptcy court erred by denying his motion for summary judgment.

---

[7] "It is well settled that an action brought under state law to establish a state created debt is separate and distinct from an action brought under § 523(a) of the Bankruptcy Code to determine the dischargeability of the same debt." In re Tatge, 212 B.R. 604, 609 (8th Cir. BAP 1997). Furthermore, bankruptcy courts have exclusive jurisdiction to determine whether debts are nondischargeable under 11 U.S.C. § 523(a)(2), (4), (6) and (15), through the application of § 523(c). See In re Ziadeh, 276 B.R. 614, 619 (Bkrtcy.N.D.Iowa 2002). In enacting § 523(a) of the Bankruptcy Code, "'Congress intended the fullest possible inquiry' to ensure that 'all debts arising out of' fraud are 'excepted from discharge,' no matter what their form[,] . . . [and] also intended to allow the relevant determination (whether a debt arises out of fraud) to take place in bankruptcy court, not to force it to occur earlier in state court at a time when nondischargeability concerns 'are not directly in issue and neither party has a full incentive to litigate them.'" Archer v. Warner, 538 U.S. 314, 321 (2003) (quoting Brown, 422 U.S., at 138 and 134). "The mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." Brown, 422 U.S., at 138.

Under Nebraska law, the applicability of collateral estoppel is a question of law. Moyer v. Nebraska City Airport Authority, 655 N.W.2d 855, 863 (Neb. 2003). "Four conditions must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action." Denny Wiekhorst Equipment, Inc. v. Tri-State Outdoor Media Group, Inc., 693 N.W.2d 506, 511 (Neb. 2005). Only the first condition is at issue here.

For the purposes of applying the doctrine of collateral estoppel, an issue is considered to be the "identical issue" in the absence of a significant factual change. Stewart v. Hechtman, 581 N.W.2d 416, 419 (Neb. 1998). "A former verdict and judgment are conclusive only as to the facts directly in issue, and do not extend to facts which may be in controversy, but which rest on evidence, and are merely collateral. It must appear that the matter set up as a bar was in issue in the former case. The test as to whether the former judgment is a bar generally is whether or not the same evidence will sustain both the present and the former action." Suhr v. City of Scribner, 295 N.W.2d 302, 304 (Neb. 1980) (quoting Gayer v. Parker & Son, 39 N.W. 845, 846 (Neb. 1888)). The estoppel created by the first judgment may not be extended beyond the issues necessarily determined by it. Woodmen of World Life Ins. Soc. v. Peter Kiewit Sons' Co., 241 N.W.2d 674, 678 (Neb. 1976).

In the Eighth Circuit, a creditor proceeding under § 523(a)(2)(A) must prove the following elements: (1) the debtor made representations; (2) at the time made, the debtor knew them to be false; (3) the representations were made with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations; and, (5) the creditor sustained the alleged injury as a proximate result of the representations having been made. In re Ziadeh, 284 B.R. 893, 898 (Bkrtcy.N.D.Iowa 2002) (citing In re Ophaug, 827 F.2d 340, 342 n. 1 (8th Cir.1987),

as modified by Field v. Mans, 516 U.S. 59, 74-75 (1995) (holding that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance)). Only actual fraud, and not fraud implied in law, satisfies § 523(a)(2)(A). In re Ophaug, 827 F.2d at 342 n. 1.

In order to maintain an action for fraudulent misrepresentation under Nebraska law, a plaintiff must allege and prove the following elements: (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that the plaintiff suffered damage as a result. Foiles v. Midwest Street Rod Ass'n of Omaha, Inc., 578 N.W.2d 418, 422 (Neb. 1998). It will be observed that the third and fourth elements stated above differ significantly from the second and third elements essential to a finding of fraud under § 523(a)(2)(A). Under Nebraska law, an intent to deceive is not an indispensable element of a cause of action for fraud based on misrepresentation of a material fact; a party may be liable for misrepresentation when a representation was false when made and the party knew that it was false or made it recklessly and without knowledge of its truth or falsity. Id.; Four R Cattle Co. v. Mullins, 570 N.W.2d 813, 816-17 (Neb. 1997).

The state court did not find specifically that Kurmel or Partners knowingly made false representations with the intention of deceiving Heartland. Indeed, it is not evident that the state court made any finding of actual fraud. For all that appears, the state court entered judgment against Partners on the basis of breach of contract or quasi-contract. I therefore agree with Kurmel that the bankruptcy court erred in holding that he is barred by the collateral estoppel doctrine from disputing that the judgment debt is nondischargeable under § 523(a)(2)(A).

On the other hand, the state court did find specifically that "Mr. Kurmel violated his fiduciary duties to Judith O. Letrud, Shelly A. Koehler, the owners of

-16-

Heartland Physical Therapy, Inc. (#43, Exhibit F at 3). This finding of constructive fraud[8] furnished the basis for the state court entering judgment in favor of Letrud and Koehler as shareholders of Heartland. (See id.)

Given the state court's clear finding that Kurmel violated his fiduciary duties, either as a director or as a shareholder of a closely held corporation, the bankruptcy court was correct in concluding that the money judgment against Kurmel necessarily was "for fraud or defalcation while acting in a fiduciary capacity," and that the debt is not dischargeable under section 523(a)(4). See Laughter v. Speight, 167 B.R. 891 (W.D.Ark. 1993), aff'd sub nom, In re Speight, 16 F.3d 287 (8th Cir. 1994) (state court judgment rendered in context of accounting on dissolution of partnership was plainly based on finding that debtor had committed defalcation in context of fiduciary relationship, and collaterally estopped debtor from relitigating issue in nondischargeability procedure, where judgment stated specifically that debtor had breached his fiduciary duty to creditor).

The Eight Circuit has interpreted the term "fiduciary" in section 523(a)(4) to refer only to trustees of "express trusts." See Hunter v. Philpott, 373 F.3d 873, 875-76 (8th Cir. 2004). "The term is used in a 'strict and narrow sense,' and therefore does not embrace trustees of constructive trusts imposed by law because of the trustee's malfeasance." Id., at 876 (quoting In re Long, 774 F.2d 875, 878 (8th Cir. 1985)). A court must look to the substance of the transaction in deciding whether a person is a fiduciary or whether the relationship is more contractual than fiduciary. See id. "In the § 523(a)(4) context, the fiduciary relationship must preexist 'the incident creating the contested debt and apart from it. It is not enough that the trust

---

[8] "Constructive fraud generally arises from a breach of duty arising out of a fiduciary or confidential relationship. Crosby v. Luehrs, 669 N.W.2d 635, 644 (Neb. 2003. Constructive fraud is implied by law from the nature of the transaction itself. Id.

relationship spring from the act from which the debt arose.'" Id., at 877 (quoting In re Dloogoff, 600 F.2d 166, 168 (8th Cir.1979)).

However, "[t]he 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." In re Cook, 263 B.R. 249, 255 (Bkrtcy.N.D.Iowa 2001) (quoting LSP Investment Partnership v. Bennett (Matter of Bennett), 989 F.2d 779, 784-85 (5th Cir.1993)). See also In re Long, 774 F.2d at 878 & n. 3 (stating, in dicta, that a statute or other state law rule may create fiduciary status in a corporate officer which is cognizable in bankruptcy proceedings, and that draining a corporation's assets for the personal benefit of an officer may thus create a bar to discharge); In re Speight, 16 F.3d at 287 (partner's fiduciary duty).

Under Nebraska law, an officer or director of a corporation occupies a fiduciary relation toward the corporation and its stockholders and is treated by the courts as a trustee. Trieweiler v. Sears, 689 N.W.2d 807, 830 (Neb. 2004). Moreover, in a close corporation such as Heartland, the stockholders owe one another the same fiduciary duty as that owed by one partner to another in a partnership. See Sadler v. Jorad, Inc., 680 N.W.2d 165, 171 (Neb. 2004).

Although Kurmel challenges the sufficiency of the appellees' pleadings in bankruptcy court, particularly their failure to specify in the amended complaint which subsection(s) of the nondischargeability statute they were relying upon,[9] their second

---

[9] The amended complaint does allege, however, that Kurmel's failure to apply payments for employee expenses and his overbilling for administrative expenses breached "various fiduciary duties," that he "did not act with 'the utmost good faith and loyalty' to his fellow shareholders of Heartland when he fraudulently billed and collected from Heartland 401(k) contributions and payroll taxes which were never deposited with the plan or paid to the applicable government entity[,]" and that he

-18-

motion for summary judgment clearly alleged that "Defendant's Debt was obtained by fraud, fraudulent misrepresentation and defalcation while acting in a fiduciary capacity, and as such, the Debt is nondischargeable under Sections 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code." (#42, ¶ 1 b.) Also, the appellees' supporting brief addressed subsection 523(a)(4) at some length. (See #45 at 5-9.) This was more than sufficient to place Kurmel on notice of this nondischargeability issue. See Laughter, 167 B.R. at 895 (creditor's failure to specifically plead applicability of § 523(a)(4) was cured by several references to subsection in post-trial brief). Indeed, Kurmel responded to the appellees' arguments regarding § 523(a)(4) in his opposing brief. (See #46 at 2-4.)

### *CONCLUSION*

The bankruptcy court properly determined that Kurmel is precluded by the state court judgment from denying that he committed "fraud or defalcation while acting in a fiduciary capacity," and that the judgment debt therefore is excepted from discharge under § 523(a)(4). The bankruptcy court erred in finding that collateral estoppel applies to the issue of nondischargeability under § 523(a)(2)(A), but such error does not affect the final outcome of the appeal.

IT IS ORDERED that the bankruptcy court's judgment is affirmed.

August 17, 2005.　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　s/ *Richard G. Kopf*
　　　　　　　　　　　　　　　　　　United States District Judge

---

"breached his fiduciary duty to Letrud and Koehler by fraudulently invoicing and collecting amounts in excess of their oral contract . . .." (#13, ¶¶ 7 e, g, h, i.) Such allegations satisfy applicable pleading requirements. See Bankruptcy Rule 7008(a); Fed. R. Civ. P. 8.